[No. 53340–7.   En Banc.   August 2, 1990.]

ADA TISSELL, *Appellant,* v. LIBERTY MUTUAL INSURANCE
COMPANY, *Respondent.*

Kenneth B. Shellan and Maltman, Weber, Reed, North & Ahrens, by Douglass A. North, for appellant.

Reed McClure Moceri Thonn & Moriarty, by William R. Hickman and Pamela Okano, for respondent.

Bryan P. Harnetiaux, Gary N. Bloom, and Robert H. Whaley on behalf of Washington State Trial Lawyers Association, amici curiae for appellant.

Bertha B. Fitzer on behalf of Washington Defense Trial Lawyers, amicus curiae for respondent.

DORE, J.—We hold that certain victim exclusions in underinsured motorist (UIM) policies are invalid as against public policy when asserted against the purchaser of a UIM policy. When so applied, the exclusions limit insurance coverage on a basis other than the risk of the insurer, and therefore contravene this State's long–standing policy of full compensation for accident victims.

FACTS

Ada Tissell is the named insured on an automobile policy issued by respondent Liberty Mutual Insurance Company. The policy provides liability coverage in the amount of $300,000 and underinsured motorist coverage in the same amount. The UIM portion of the policy provides that a "covered person" (defined as the named insured or a family member) may receive the amount which he "is legally entitled to recover from the owner or operator of an underinsured motor vehicle . . ." in compensation for injuries received in an accident. The term "underinsured motor vehicle" is defined as a vehicle "To which a liability bond or policy applies at the time of the accident but its limit [*sic*] is not enough to pay the full amount the covered person is legally entitled to recover as damages." The policy excludes from this definition any automobile:

> 1. Owned by or furnished or available for the regular use of you or any family member unless the covered person was neither operating nor occupying such vehicle at the time of the accident.
>
> . . . .
>
> 5. To which the liability coverage of this policy applies.

Clerk's Papers, at 41–42. It is undisputed that Ada Tissell meets the definition of "covered person." The question is whether these exclusions bar her from recovering under the UIM portion of her policy.

Riding as a passenger in the family car on December 27, 1983, Tissell was seriously injured when her husband accidentally drove the car off the road and into the Green River. Tissell fell into a coma, and died approximately 5 years later. Tissell, through her guardian, made a claim on the liability coverage purchased from Liberty and Liberty paid the full amount of that coverage. Because of the serious, permanent and long–term nature of Tissell's injuries, however, the liability coverage was not adequate to compensate her, and she made a claim on the UIM portion of

the Liberty policy. Liberty denied coverage, citing the family member and liability coverage exclusions quoted above.

Tissell filed suit and the trial court granted summary judgment to Liberty on the ground that Tissell's policy "does not provide underinsured motorist coverage for Plaintiff." Clerk's Papers, at 75. We now reverse and remand with directions to enter judgment for Tissell.

## MILLERS IS DISTINGUISHABLE

Liberty argues that both the family member and liability coverage exclusions were upheld as valid in *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 665 P.2d 891 (1983). That is not the case.

In *Millers,* the insurance policy at issue contained two exclusions. First, it excluded family members from recovery where the named insured was operating or occupying the vehicle at the time of the accident. Second, it excluded recovery from both the liability and UIM portions of a single policy. The victims of a 1–car accident asserted a right to recovery under both the liability coverage and the UIM coverage, since the liability coverage alone did not adequately compensate them. We held that the victims in *Millers* were not entitled to recovery from the UIM portion of the policy but were instead limited to recovery only from the liability portion of the policy.

This case is distinguishable, even though the same exclusions are present in Mrs. Tissell's policy. First, neither of the two victims in *Millers* was a member of the insured's family. Therefore, the family member exclusion was not at issue in *Millers,* and the case did not decide its validity. This case, in contrast, does raise the validity of family member exclusions in UIM policies. As shown in a later section of this opinion, that exclusion is invalid.

That leaves the exclusion barring recovery under both the liability and UIM portions of a policy covering the same car (the "liability coverage exclusion"). Liberty and amicus curiae on behalf of Washington Defense Trial Lawyers argue that, under *Millers,* the liability coverage exclusion is

valid and bars Mrs. Tissell's claim. We disagree. This case is distinguishable from *Millers*. In *Millers,* the victims were not the purchasers of the UIM policy. Here the victim is the purchaser of the UIM policy.

That is a crucial distinction. The fundamental public policy underlying our UIM scheme is full compensation for victims of automobile accidents. *Hamilton v. Farmers Ins. Co.,* 107 Wn.2d 721, 727, 731, 735, 733 P.2d 213 (1987); *Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 530–31, 707 P.2d 125 (1985); *Elovich v. Nationwide Ins. Co.,* 104 Wn.2d 543, 550, 707 P.2d 1319 (1985). In *Millers,* the policy of full compensation was not violated by the refusal of UIM benefits. Since the accident victims in *Millers* were not the purchasers of the UIM policy in question, UIM coverage was available to those victims elsewhere, through their own insurers. That being the case, the decision to deny those victims coverage against the driver's UIM policy, based on the liability exclusion, did not thwart the policy of full compensation. *Millers,* at 7–8.

Where the victim is the purchaser of the UIM policy, however, the denial of UIM benefits will thwart the public policy in favor of full compensation. In those situations, the victim does not have any alternative source of UIM coverage. It is not reasonable to expect that any motorist will buy more than one UIM policy. Since such a victim's only source of UIM coverage is cut off by the liability coverage exclusion in his policy, the exclusion frustrates the Legislature's intent to provide UIM coverage to all potential victims.

In the present case, Tissell is the purchaser of the UIM policy claimed against. Unlike the victims in *Millers,* she could not have purchased UIM coverage elsewhere; this *is* her UIM policy. If the liability coverage exclusion is asserted against her, it will deprive Tissell of all UIM coverage. That fact renders this policy exclusion invalid, because the Legislature has mandated that UIM protection be made available to all potential victims.

*Millers,* then, is a limited exception to the policy of full compensation for victims. *Millers* stands only for the rule that a victim *who is not the insured* can be excluded from recovery against the UIM portion of a policy where he is compensated by that policy's liability coverage. This case, in contrast, demonstrates that such a liability coverage exclusion cannot be applied to bar UIM recovery by the purchaser of the policy in question. Such an exclusion would deprive the insured of all UIM coverage in violation of the public policy underlying our UIM statute: full compensation of automobile accident victims. *Millers'* rule and rationale clearly do not apply here, because Mrs. Tissell is the purchaser of the UIM policy and is entitled to the UIM coverage she paid for.

### FAMILY MEMBER EXCLUSIONS ARE INVALID AS AGAINST PUBLIC POLICY

We consider next the validity of the family member exclusion contained in the Liberty Mutual underinsured motorist policy purchased by Ada Tissell. In light of the principles established in *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972), *Britton, Hamilton,* and *Elovich,* we hold that the family member exclusion violates the public policy in favor of full compensation for accident victims, has not been authorized by the Legislature, and is void as a result. *Hamilton v. Farmers Ins. Co.,* 107 Wn.2d 721, 733 P.2d 213 (1987).

We considered the *validity* of family member exclusion clauses in automobile *liability* policies in the case of *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 95 Wn.2d 373, 622 P.2d 1234 (1980), *adhered to on rehearing,* 97 Wn.2d 203, 643 P.2d 441 (1982). We began with the premise that the financial responsibility act, RCW 46.29, states a public policy in favor of full compensation for accident victims. 97 Wn.2d at 207. *See LaPoint v. Richards,* 66 Wn.2d 585, 590, 403 P.2d 889 (1965). We held that family member exclusions in automobile liability policies could not be reconciled with that statutory policy.

> The family or household exclusion clause strikes at the heart of this public policy. This clause prevents a specific class of innocent victims, those persons related to and living with the negligent driver, from receiving financial protection under an insurance policy containing such a clause. In essence, this clause excludes from protection an entire class of innocent victims for no good reason.

97 Wn.2d at 208. The *Wiscomb* opinion distinguished other exclusions previously upheld, on the ground that they were directed at certain classes of drivers, not certain types of victims. We reasoned that an exclusion may be justified where an insurer's risk is affected by the nature of the persons or conduct excluded—such as when an unauthorized driver takes the wheel. However, where the exclusion is aimed at a certain type of victim, that justification does not apply. The nature of the victim has no bearing on the risk of an accident's occurring.

> An insurer is free to limit its risks by excluding coverage when the nature of its risk is altered by factors not contemplated by it in computing premiums, such as the use of a vehicle by an unauthorized driver. The family or household exclusion, by contrast, is directed at a class of innocent victims who have no control over the vehicle's operation and who cannot be said to increase the *nature* of the insurer's risk. *An exclusion which denies coverage when certain victims are injured is violative of public policy.*

(Some italics ours.) 97 Wn.2d at 209. Naturally insurers will pay more in claims than they would if they could impose such an exclusion, and premiums might rise as a result. *Wiscomb* stands for the rule that that is no justification for departing from a policy of full compensation for victims. Since the fact that the victim is a member of the insured's family does not subject the insurer to an indeterminate risk, the insurer is able to calculate an appropriate premium and the general policy of full compensation for accident victims still applies.

There is no reason to reach a different result with respect to family member exclusions contained in UIM policies. We recognized in *Wiscomb* that the public policy behind the financial responsibility act is identical to the public policy behind the UIM statute. Both rest on the

policy of full compensation articulated in *Touchette, Britton* and, by implication, *Elovich* and *Hamilton.* 97 Wn.2d at 207–08. The family member exclusion has precisely the same effect in the UIM context as in the liability insurance context. It excludes a class of victims, even though the identity of accident victims has no bearing on the nature of the insurer's risk. Consequently, the family member exclusion violates the public policy in favor of full compensation which the Legislature established in passing the UIM statute. Under the rule of our cases, it is void.

### CONCLUSION

Tissell contracted for UIM coverage. She has not been fully compensated by her husband's liability coverage and she is entitled to the additional UIM coverage she paid for, regardless of the fact that both types of coverage were written as parts of a single policy. Any other result violates this State's declared policy of full compensation for accident victims.

SMITH, J., concurs.

CALLOW, C.J. (concurring)—Ada Tissell was named as an insured on an automobile policy issued to herself and her husband. The policy provided for $300,000 in liability coverage and $300,000 in underinsured motorist (UIM) coverage. Mrs. Tissell was injured when her husband negligently drove the family car off the road. She eventually died from the injuries.

The insurer paid Tissell's guardian $300,000 under the liability portion of the insurance policy. Tissell's guardian also claimed an additional $300,000 under the UIM portion of the policy. When the insurer refused to pay, the present lawsuit ensued.

The Tissells' insurance policy unambiguously excluded from the definition of an underinsured motor vehicle any vehicle covered under the liability portion of the policy. I disagree with the majority regarding the extent to which

this exclusion violates RCW 48.22, the underinsured motorist statute and public policy.

It is helpful to set forth the pertinent provisions of the Tissells' insurance policy before discussing its interaction with the statute. The policy reads in part:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of:
  1. Bodily injury sustained by a covered person and caused by an accident: and

. . . .
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.

We will pay under this coverage only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

"Covered person" as used in this endorsement means:
  1. You or any family member.
  2. Any other person occupying your covered auto.
  3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

. . . .
"Underinsured motor vehicle" means a land motor vehicle or trailer of any type:

. . . .
  2. To which a liability bond or policy applies at the time of the accident but this limit is not enough to pay the full amount the covered person is legally entitled to recover as damages.

. . . .
However, "underinsured motor vehicle" does not include any vehicle or equipment:
  1. Owned by or furnished or available for the regular use of you or any family member unless the covered person was neither operating nor occupying such vehicle at the time of the accident.

. . . .
  5. To which the liability coverage of this policy applies.
EXCLUSIONS
A. We do not provide Underinsured Motorists Coverage for property damage or bodily injury sustained by any person:

1. While operating or occupying any motor vehicle owned by or available for the regular use of you or any family member which is not insured for Liability coverage under this policy.

In *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 665 P.2d 891 (1983), we held that a policy exclusion, similar to the one which denied UIM coverage to Tissell's liability covered car, neither violated the UIM statute nor the State's public policy. In *Millers,* however, the exclusion at issue was applied to "other insureds". The distinction between "named insureds and family members" and "other insured" is critical in understanding whether coverage exists.

As observed in *Blackburn v. Safeco Ins. Co.,* 115 Wn.2d 82, 794 P.2d 1259 (1990), insurance contracts' UIM endorsements prescribe who is entitled to seek indemnification by specifically defining the term "insured" or "covered person". *See* 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 33.1, at 19 (2d ed. 1987). In many UIM policies, "covered persons" are divided into three classes:[1]

1. You or any family members (named insured);
2. Any other person while occupying your covered vehicle (other insured); and
3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1 or 2 above.

■ The underinsured motorist policy affords those "named insureds" under class 1 with *first party* coverage that applies at all times, whatever may be the insured's activity at the time of the accident. *See Kowal v. Grange Ins. Ass'n,* 110 Wn.2d 239, 245, 751 P.2d 306 (1988). Persons covered under class 2, occupying a covered vehicle

---

[1]This definition of "covered persons" is widely used by the insurance industry. *See* INSURANCE SERVICES OFFICE PERSONAL AUTO POLICY PORTFOLIO: Underinsured Motorist Coverage Form PP 03 11 (ed. 6–80), *reprinted in* 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* app. H (2d ed. 1987).

("other insureds"), however, are covered only while occupying a covered motor vehicle. These "other insureds" have the option of contracting with an insurance company for their own UIM coverage under a policy which provides them with UIM coverage that applies at all times as a "named insured". Thus, insureds have the option to contract with an insurance company and pay a premium for UIM insurance that applies at all times, regardless of their status in a particular vehicle.

In contrast to Mrs. Tissell, who was a "named insured", the *Millers* case involved claimants who were "other insureds" under the policy from which they sought UIM benefits. In *Millers,* an intoxicated driver caused a single-car accident which killed one passenger and injured another. *Millers,* 100 Wn.2d at 2. After the insurer paid the limits of the driver's liability coverage, the claimants sued to recover under the driver's UIM coverage. *Millers,* 100 Wn.2d at 3.

The *Millers* court articulated several reasons that justified the denial of that policy's UIM coverage to these "other insured" claimants. As to the first reason, *Millers* implied that RCW 48.22.030(2)'s[2] language manifested a

---

[2]Washington's underinsured motorist statute mandates that

"(1) 'Underinsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.

"(2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom, except while operating or occupying a motorcycle or motor-driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any

legislative intent that the statute contemplated two distinct motor vehicles. In reaching this conclusion, we relied on *Breaux v. Government Employees Ins. Co.,* 369 So. 2d 1335 (La. 1979) which interpreted a statute substantially similar to our statute. *Millers,* 100 Wn.2d at 5–6. As noted by *Millers,* the Louisiana court reasoned that

[a]s to coverage under the uninsured motorist provisions of a particular policy, *the statute thus contemplates two distinct motor vehicles: the motor vehicle with respect to which uninsured motorist coverage is issued and the "uninsured or underinsured" motor vehicle.* In addition, as to each policy containing uninsured motorist coverage, *the statute distinguishes between the person insured under the policy in question and the owner or operator of the uninsured or underinsured motor vehicle.*

*Millers,* 100 Wn.2d at 6 (quoting *Breaux,* 369 So. 2d at 1338).

The uninsured motorist statute, by definition, stated a 2–car rule. There cannot be a single vehicle which is both *ins*ured and *un*insured. When the Legislature amended the statute to include underinsured motorists, it retained similar language, but now the circumstances, the concept and the interpretation can be different. Under the statute and common sense, one car can be both *ins*ured and *under*insured.

The distinctions relating to public policy reasons articulated in *Millers,* an "other insured", as applied to Tissell, a "named insured", explain why interpreting the statute to require a 2–car rule does not foresee all the circumstances that require a different interpretation of the UIM statute. The *Millers* court offered three distinctions between the uninsured and underinsured motorist statutes and claims arising thereunder for upholding the policy exclusion and denying coverage:

---

family member, and which is not insured under the liability coverage of the policy. . . .

"(3) Except as to property damage, coverage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section. . . ." RCW 48.22.030.

First, . . . the injured party has not paid a premium for coverage to this insurer. Thus, there is no danger the insurer will gain a windfall if it is not forced to pay under both provisions of the policy. Second, unlike uninsured motorist coverage, the honoring of this kind of exclusion in underinsured motorist coverage does not leave the injured party completely without compensation. He has already received some compensation pursuant to the liability coverage of the policy. Third, assuming the injured party has automobile insurance of his own, he should be able to collect additional amounts as a result of that policy's underinsured motorist coverage.

*Millers,* 100 Wn.2d at 7 (quoting Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash. L. Rev. 819, 827 (1980). The court emphasized that the passengers in *Millers* could have obtained underinsured coverage from their own insurers. *Millers,* 100 Wn.2d at 8.[3]

Mrs. Tissell's status as a "named insured" separates her in several important respects from the claimants in *Millers.* Unlike the claimants in *Millers,* this insurer was paid a separate premium for UIM coverage that covers her as a "named insured". Unlike the claimants in *Millers,* Mrs. Tissell has not *already* been compensated under both the negligent driver's liability policy and her own UIM policy. Unlike the claimants in *Millers,* Mrs. Tissell did not have an opportunity to protect herself by purchasing other UIM coverage; the policy at issue concerns Mrs. Tissell's UIM coverage. The public policy factors articulated in *Millers* favor recovery for Mrs. Tissell.

The majority ignores the reasons underlying the decision in *Millers* and misstates the holding in *Millers.* The majority states that *Millers* stands "only for the rule that a victim *who is not the insured* can be excluded from recovery against the UIM portion of a policy where he is compensated by that policy's liability coverage." Majority, at 112. The majority leaves out the crux of *Millers*: a victim who is not a *named* insured can be excluded from recovering

---

[3]The *Millers* court also noted a commonsense understanding of underinsurance and stated that if the *Millers* passengers were permitted to recover, it would in effect be converting UIM coverage into liability insurance. *Millers,* 100 Wn.2d at 8.

against the UIM portion of a policy where he is compensated by the policy's liability coverage.

■ Moreover, the majority's fixation on the UIM statute's public policy of "full compensation" is misplaced. In protecting the innocent victim of an auto accident, UIM insurance provides a source of indemnification when the tortfeasor does not provide adequate protection. Washington's UIM coverage has been described as a layer of excess coverage that "floats" on the top of recovery from other sources. *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 549–50, 707 P.2d 1319 (1985). Thus, UIM coverage is a second layer of coverage for the injured party.

The majority opinion improperly translates the statutory purpose of assuring a dual layer of recovery into an overriding policy of ensuring "full compensation for accident victims". Majority, at 108, 111, 112. Our prior cases dispute this analysis. This court has approved limitations on UIM coverage which are not specifically articulated in the UIM statute, even though such limitations deny "full compensation" to an accident victim. The majority's concern for "full compensation" begs the real question presented—whether the ability of a "named insured" to purchase additional liability coverage justifies an exclusion which denies the "named insured" UIM protection when injured by the negligence of another person insured under the same policy. The purpose of underinsured motorist insurance is to provide the insured with a second floating layer of protection in every case in which the insured is "legally entitled to recover" damages from a negligent tortfeasor. RCW 48.22-.030. *See also Elovich.* It is the UIM statute's policy to assure a second floating layer of compensation. *Elovich*, 104 Wn.2d at 549–50.

■■ Mrs. Tissell, as a "named insured", should be allowed to recover from *her husband's liability* insurance and *her own UIM* insurance. Where coverage is in terms of "the insured", courts consider the contract between the insurer and several insureds to be separable; that is, there is a separate contract with each insured. *See Standard Fire*

*Ins. Co. v. Blakeslee,* 54 Wn. App. 1, 5, 771 P.2d 1172 (case involving obligation of insurer for liability of dentist and professional service corporation as insureds), *review denied,* 113 Wn.2d 1017 (1989); *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 266, 579 P.2d 1015 (1978) (case involving obligation of insurer under accident policy for fire set by minor child of insured). *Accord, Federated Am. Ins. Co. v. Strong,* 102 Wn.2d 665, 669, 689 P.2d 68 (1984) (applying *Unigard* reasoning to automobile insurance policy). *See also* 43 Am. Jur. 2d *Insurance* § 191, at 274 (1982) (where several persons are insured under one policy, the rights and obligations of one insured are not necessarily dependent upon those of another insured, and the insurer may undertake separate and distinct obligations to the various insureds).

The insured cannot efficiently insure against the negligence of other "named insureds". Extension of the 2–car rule to "named insureds" would require an insured who desires to protect against the risk of injury caused by the negligence of another "named insured" to purchase more *liability* insurance. Liability insurance protects the insured against liability to *all third parties,* not just other "named insureds". Only a fraction of the premium an insured would have to pay to obtain additional liability coverage would be attributable to the risk of injury due to the negligence of a "named insured"; the majority of the premium would cover the potential additional liability to third parties. The average insurance consumer would seldom be aware of the risk of undercompensation if we required an extension of the 2–car rule. In all probability, very few insurance purchasers would alter their purchasing decisions in response to such a decision. In any event, it is for the Legislature, not this court, to determine the amount of liability insurance the responsible automobile driver must carry. I would hold that the public policy underlying the UIM statute prevents insurers from applying the 2–car rule to named insureds.

■ Finally, I disagree with the majority's holding that the family member exclusion violates the public policy in

favor of full compensation for accident victims. Majority, at 112. Likewise, I disagree with the majority's statement that *"Wiscomb [Mutual of Enumclaw Ins. Co. v. Wiscomb,* 95 Wn.2d 373, 622 P.2d 1234 (1980), *adhered to on rehearing,* 97 Wn.2d 203, 643 P.2d 441 (1982)]* stands for the rule that that is no justification for departing from a policy of full compensation for victims." Majority, at 113. As previously discussed, the majority's fixation on full compensation is misplaced. I agree, however, with the majority that the family member exclusion at issue is void—instead of the vague notion of "full compensation", I find the reasoning of *Wiscomb* controlling. In *Wiscomb* we stated:

> [T]he intended purpose of the financial responsibility act is for the benefit of owners and drivers of motor vehicles . . . and, *more fundamentally,* [it is] *designed to give monetary protection to that ever changing and tragically large group of persons who, while lawfully using the highways themselves, suffer serious injury through the negligent use of those highways by others.*
> (Italics ours.) *LaPoint [v. Richards,* 66 Wn.2d 585], at 590[, 403 P.2d 889 (1965)]. . . .
> . . . This same public policy has been carried over into the new underinsured motorist statute . . ..
> The family or household exclusion clause strikes at the heart of this public policy. This clause prevents a specific class of innocent victims, those persons related to and living with the negligent driver, from receiving financial protection under an insurance policy containing such a clause. In essence, this clause excludes from protection an entire class of innocent victims for no good reason.
>
> . . . .
> . . . The family or household exclusion, by contrast, is directed at a class of innocent victims who have no control over the vehicle's operation and who cannot be said to increase the *nature* of the insurer's risk. An exclusion which denies coverage when certain victims are injured is violative of public policy.

*Wiscomb,* 97 Wn.2d at 207–09. As these excerpts from *Wiscomb* clearly point out, a policy of "full compensation" was not the basis for invalidating the family exclusion.

I would find that the same policy considerations, discussed in *Wiscomb,* apply to the UIM family exclusion in Tissell's case. Hence, the family exclusion at issue is void.

In conclusion, the two insurance policy exclusions are void and Mrs. Tissell's estate should recover.

UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, and DURHAM, JJ., and PEARSON, J. Pro Tem., concur with CALLOW, C.J.

Reconsideration denied January 9, 1991.