[No. 53498–5. En Banc. March 10, 1988.]

KELLY M. KOWAL, *Respondent*, v. GRANGE INSURANCE ASSOCIATION, *Petitioner*.

240

*Murray, Dunham & Murray,* by *Wayne Murray,* for petitioner.

*Thomas J. Chambers* and *Donald S. Means,* for respondent.

*Bryan P. Harnetiaux, Gary N. Bloom,* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae for respondent.

CALLOW, J.—This is an action to compel arbitration of an underinsured motorist claim for an insured injured while a passenger in an uninsured automobile owned and driven by a third party.

On September 6, 1982, the plaintiff, Kelly M. Kowal, was injured while riding as a passenger in an uninsured vehicle. The accident occurred when the vehicle's driver, Donald Moore, failed to negotiate a turn and the vehicle left the roadway and came to rest in a field. The plaintiff submitted a claim for damages under the underinsured motorist section of her stepfather's Grange Insurance Association automobile insurance policy. Grange denied Kelly Kowal's claim for damages.

David P. Kowal is the named insured on the automobile insurance policy in question. The declaration page of the policy lists two covered automobiles—a 1964 Volkswagen and a 1976 Datsun.

David Kowal is not Kelly Kowal's biological father and has never adopted her. However, Mr. Kowal was married to Nancy Lee Putnam, the plaintiff Kelly M. Kowal's mother, in 1965. David Kowal and Nancy Putnam were divorced in 1972 or 1973. After the divorce, Kelly Kowal resided primarily with David Kowal, but at times lived with her mother. At the time of the accident Kelly Kowal was 19 years of age and residing with David Kowal.

Prior to the accident, several changes had been made to David Kowal's automobile insurance policy with regard to Kelly Kowal. First, on September 28, 1981, David Kowal signed a change application which provided:

Type of Change (be specific) Add daughter as occasional operator—will not drive '76 Dat at all.

In return for the addition of coverage for Kelly Kowal, David Kowal paid an additional premium of $40.20.

On October 28, 1981, David Kowal requested that coverage for Kelly Kowal be removed from his policy because he had been laid off from his job and could no longer afford the additional premium. As a result, the following restrictive endorsement was added to the policy:

Voiding Automobile Insurance While a Certain Person(s) Is Operating Car.
(Attach to your policy)

This endorsement is part of your policy. It restricts coverage given in the policy.

There is no coverage in the policy for anyone for claims arising from any loss or damage caused by a covered auto while being driven or operated by Kelly Marie Kowal.

On March 19, 1982, David Kowal again requested that Kelly Kowal be added to his policy as an occasional driver of the 1964 Volkswagen. On March 27, 1982, Kelly Kowal filled out a Youthful Operator Information form, indicating that she drove the 1964 Volkswagen once or twice a week for shopping and convenience. On April 20, 1982, the above quoted restrictive endorsement was canceled, restoring coverage for Kelly Kowal effective March 19, 1982. No further changes were made to the policy with respect to Kelly Kowal prior to the accident in which she was injured. Therefore, at the time of her injuries, there was coverage in the policy for damages caused by the 1964 Volkswagen while it was being operated by Kelly Kowal. The parties dispute whether the policy provided underinsured motorist coverage for Kelly Kowal.

The complaint in the present case was filed in January 1984, by Kelly Kowal, seeking to compel arbitration of her underinsured motorist claim. Thereafter Grange Insurance Association filed a motion for summary judgment, which was granted in its favor. The Court of Appeals reversed, finding that Kelly Kowal was "an insured" under the liability section of the policy and therefore covered by the underinsured motorist provision. We agree.

This case presents two issues: (1) whether Kelly Kowal is an insured under the policy, and (2) whether the policy, interpreted in light of RCW 48.22.030, provides underinsured motorist coverage for its insureds if they are injured while riding as passengers in underinsured vehicles.

The initial issue is whether the plaintiff, Kelly Kowal, is "an insured" under the underinsured motorist endorsement of her stepfather's insurance policy. The underinsured motorist endorsement states that:

> The Company agrees to pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an underinsured automobile because of bodily injury . . . sustained by the insured, caused by accident arising out of the ownership and the applicable general conditions of this policy, maintenance or use of such underinsured automobile, all subject to the terms of this endorsement . . .

Under the definitions section of the underinsured motorist endorsement, the policy states that:

> "Insured" means each person covered as an insured under the bodily injury liability protection of the policy to which this endorsement is attached (this policy).

There are certain exclusions listed in the underinsured motorist endorsement, none of which are applicable to the present facts.

The plaintiff, Kelly Kowal, argues that because coverage for her was specifically added to the policy by her stepfather, and an additional fee paid for this coverage, she is "an insured" and entitled to recover under the underinsured motorist endorsement of the policy.

The defendant insurance company proffers that one is insured under the underinsured motorist endorsement only when one is first insured under the liability portion of the policy and only in situations which could lead to liability on the part of the insured. To support this position, the defendant insurer points to the liability statement of the policy, which reads:

> We will pay damages the insured becomes legally obligated to pay. The damages must be because of negligence causing or contributing to an accident.

The defendant argues that liability coverage is only provided where there has been an "accident," with accident being defined narrowly as:

> an event not expected or intended. It must cause bodily injury or property damage. It must result directly from the operation, maintenance or use of a covered auto.

"Covered autos" are those described in the policy, newly acquired by the named insured, temporary substitutes for described autos, or autos borrowed by the insured with permission of the owner.

The insurer argues that the definition of "insured" in the liability section is narrowed by the limitations on the situations in which the company will pay damages. The defendant insurer asserts that a person is "an insured" under the liability portion of the policy only when using a covered auto because liability attaches only when there has been "an accident," and "an accident" can only occur from the "operation, maintenance or use of a covered auto." Since the definition of "insured" for purposes of the underinsured motorist endorsement is linked to the definition of insured under the liability portion of the policy, such an interpretation would deny underinsured motorist benefits to anyone not driving a covered vehicle. Kelly Kowal's injuries occurred when she was a passenger in an underinsured auto *not falling* within the category of "covered auto" under the policy, and it is on this basis that the defendant denied her coverage under the underinsured motorist endorsement.

The insurance company's narrow definition of "insured" confuses two separate areas of insurance coverage. In determining whether an insurance policy provides coverage for a particular injury, one must ask: (1) Is the person claiming damages protected under the policy? and (2) does the situation in which the injury occurred fall within the class of risks insured against under the policy? In any event we must interpret the policy from its wording at the time of its issuance since the rights of the parties were fixed at that time. *Grange Ins. Ass'n v. Great Am. Ins. Co.*, 89 Wn.2d 710, 717, 575 P.2d 235 (1978).

The definition of "an insured" answers the first question, while the narrow definition of "accident" which includes only "covered autos" is an answer to the second. To find liability on the part of the insurer under the liability section of the policy, a court must find both that the claimant was intended to be protected under the policy *and* that the

injury was the type of risk protected against by the policy. A person may be an insured, yet not invoke liability on the part of the insurer if there has been no "accident" as that term is defined in the policy.

Kelly Kowal is "an insured" under the liability portion of the policy. David Kowal specifically requested that coverage for Kelly Kowal be added to the policy, and paid an additional premium for the added coverage. If Kelly had been driving her stepfather's Volkswagen and negligently inflicted injury on a third person, the third person could have recovered under the liability portion of the policy because both conditions of coverage would be met: the injury would be caused by "an insured," Kelly Kowal, and the injury would be within the risks insured against, the accidental injury of a third person by an insured. In the present situation, the liability portion of the policy is not invoked because the injury which occurred was not under that coverage. It was not an injury to a third person but a direct injury to the insured. No person insured under the policy negligently injured a third person.

It has been suggested that Kelly Kowal, as a passenger in a vehicle not covered by the policy, could have been liable for an injury to a third party by some act on her part such as grabbing the steering wheel or interfering with the driver. While this is so, we do not hang our decision on such a small peg. As an insured, she is entitled to the protection of the underinsured motorist coverage of the policy which provides coverage for her whatever her activity may have been when she was injured by an underinsured motorist.

Kelly Kowal is "an insured" under the liability section and is therefore an insured under the underinsured motorist endorsement as well. Once it is determined that a person is an insured under the policy, the person is entitled to underinsured motorist coverage and that coverage is not dependent on the insured occupying a vehicle named in the policy. *Federated Am. Ins. Co. v. Raynes,* 88 Wn.2d 439, 563 P.2d 815 (1977).

 Even if the defendant insurance company's interpretation of the policy were reasonable, it is not an interpretation which is readily apparent to the average policy holder. As stated in *Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 358, 517 P.2d 966 (1974), "[t]he language of insurance policies is to be interpreted in accordance with the way it would be understood by the average man, rather than in a technical sense." An average person reading the underinsured motorist provision that "'Insured' means each person covered as an insured under the bodily injury liability protection of the policy" would assume that a person for whom liability coverage was purchased by payment of an additional premium would also be entitled to underinsured motorist coverage. This is particularly true where underinsured motorist coverage is required to be offered along with any policy of automobile liability insurance sold in the state of Washington:

> No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit–and–run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom, except while operating or occupying a motorcycle or motor–driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy.

RCW 48.22.030(2). The statute goes on to provide that:

> A named insured or spouse may reject, in writing, underinsured coverage for bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply.

RCW 48.22.030(4). Kelly Kowal never rejected underinsured motorist coverage for herself nor did David Kowal, the other named insured.

█ Finally, if the defendant's interpretation of the policy's coverage is plausible, it is only because the language setting forth who is to be an insured under the policy is ambiguous.

Coverage is considered ambiguous "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable". *Morgan v. Prudential Ins. Co. of America,* 86 Wn.2d 432, 435, 545 P.2d 1193 (1976) and cases cited therein. If ambiguous it should be interpreted in accordance with the way it would be understood by the ordinary man buying insurance, "even though a different meaning may have been intended by the insurer." It is fundamental that ambiguities in the policy must be construed against the insurer and in favor of the insured. This rule applies with added force in the case of exceptions and limitations to the policy's coverage.

(Citations omitted.) *Witherspoon v. St. Paul Fire & Marine Ins. Co.,* 86 Wn.2d 641, 650, 548 P.2d 302 (1976); *accord, Shotwell v. Transamerica Title Ins. Co.,* 91 Wn.2d 161, 167–68, 588 P.2d 208 (1978), and cases cited therein. . . . In any event insurance contracts should be given a fair, reasonable and sensible construction which fulfills the apparent object of the contract rather than a construction which leads to an absurd conclusion or renders a policy nonsensical or ineffective. *Morgan v. Prudential Ins. Co. of America, supra.* Ambiguity should be resolved so that a doubtful provision in a contract will not unfairly devour the whole policy or relieve the insurer from liability fairly within the spirit of the policy. *Riordan v. Commercial Travelers Mut. Ins. Co.,* 11 Wn. App. 707, 525 P.2d 804 (1974).

(Citations omitted.) *McDonald Indus., Inc. v. Rollins Leasing Corp.,* 95 Wn.2d 909, 912–13, 631 P.2d 947 (1981). If the language of the policy is ambiguous, it must be interpreted in a light most favorable to the plaintiff, Kelly Kowal, and therefore must be read to provide coverage for her as "an insured." We construe the policy as would an

ordinary consumer and determine that Kelly Kowal is an insured thereunder as an additional insured for whose coverage an added premium was paid.

Defendant insurance company cites *Dobosh v. Rocky Mt. Fire & Cas. Co.,* 43 Wn. App. 467, 717 P.2d 793, *review denied,* 106 Wn.2d 1011 (1986) as authority contrary to our ruling in this opinion. Our determination in the present case is not inconsistent with *Dobosh. Dobosh* addressed the issue of whether underinsured motorist coverage purchased by the driver of a vehicle should be construed to extend coverage to passengers in the vehicle who were neither named as insureds in the policy nor family members of the named insured. *Dobosh* found that there was no coverage for these unrelated persons.

*Dobosh* is not controlling under the facts of the present case. Kelly Kowal falls within a class of potential claimants entirely separate from those denied coverage under *Dobosh* because she is an insured named specifically in the policy. If the claimants in *Dobosh* were to receive coverage under the driver's underinsured motorist policy, they would benefit thereby solely because they were passengers in his vehicle. By contrast, Kelly Kowal is a named insured, entitled to the benefits of underinsured motorist coverage regardless of the circumstances surrounding her injury, so long as that injury was caused by an underinsured motorist.

The claimant insured has urged us to overrule *Dobosh.* Because we find that the *Dobosh* case and this case present two different issues of coverage, it is unnecessary to decide the propriety of the *Dobosh* decision.

We have found that Kelly Kowal is entitled to coverage under the insurance policy issued by the defendant and therefore we need not address the larger issue of whether an insured under a standard underinsured motorist endorsement is entitled, under RCW 48.22.030, to recover damages for injuries sustained while riding as a passenger in any underinsured vehicle. We remand the case for the

arbitration of damages as prayed for in the complaint of the insured.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.