926 P.2d 923 (1996)
130 Wash.2d 688
Sungeeta JAIN, Individually, and all the members of the Class of Persons similarly denied UIM Coverage by One or more of the Defendants, Plaintiffs,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corp.; State Farm Fire & Casualty Co., a Corp.; State Farm General Ins. Co., a Corp., Defendants.
No. 63523-4.
Supreme Court of Washington, En Banc.
Argued May 16, 1996.
Decided November 27, 1996.
*924 Reed McClure, by Earl M. Sutherland and William L. Holder, Seattle, for defendants.
William W. Houck, Issaquah, Margaret K. Dore, Seattle, for plaintiffs.
SANDERS, Justice.
The United States District Court certified a question to this court regarding underinsured motorist insurance, retroactive application of case law, and the voidability of releases. The question is:
Whether pursuant to Bradbury v. Aetna Cas. & Sur. Co., 91 Wash.2d 504, 589 P.2d 785 (1979), Tissell v. Liberty Mut. Ins. Co., 115 Wash.2d 107, 795 P.2d 126 (1990) should be applied retroactively to void the release at issue.
We answer yes and hold under Bradbury v. Aetna Cas. & Sur. Co., 91 Wash.2d 504, 589 P.2d 785 (1979) Tissell should be retroactively applied to void the release enabling plaintiff to collect under the policy's UIM coverage.
In June 1986, 10-year-old plaintiff Sungeeta Jain was seriously injured when the car driven by her mother left the roadway and rolled. Sungeeta was rendered and remains paraplegic, being immobile from the upper lumbar spine down.
The car, owned by Sungeeta's father and his business partner, was insured by State Farm Mutual Automobile Insurance Company (State Farm). Under the terms of the policy, Sungeeta Jain, as a relative of her father, is a named insured. The insurance policy included coverage for bodily injury liability (liability), personal injury protection (PIP), and underinsured motor vehicle bodily injury (UIM).
Sungeeta's attorney and her court-appointed guardian ad litem negotiated two consecutive settlements, obtaining a total of $325,000 for Sungeeta under the liability and PIP coverage. The $325,000 was the maximum available to Sungeeta under these coverages but was well below actual damages.
At the time, her attorneys, knowledgeable in insurance matters, did not press for UIM benefits because the policy explicitly excluded the vehicles covered by the policy (i.e., the Jain vehicle) from the definition of underinsured motor vehicle.[1] Upon receipt of the *925 maximum liability and PIP benefits, Sungeeta signed a final settlement agreement releasing State Farm forever from any further liability under the policy[2] but without specific reference to UIM coverage or consideration for the settlement of any potential UIM claim.[3]
Five months after this settlement and release, our court published its opinion in Tissell v. Liberty Mut. Ins. Co., 115 Wash.2d 107, 795 P.2d 126 (1990) which held clauses excluding the policyholder's own car from the definition of underinsured vehicle void as against public policy when same deny UIM recovery to the named insured (i.e., the policyholder and immediate family). If Tissell had been decided prior to Sungeeta's settlement, the policy clause denying her UIM benefits would have been demonstrably void, obviously entitling her to UIM benefits.
Sungeeta then brought suit claiming that under Bradbury v. Aetna Cas. & Sur. Co., 91 Wash.2d 504, 589 P.2d 785 (1979) Tissell must be retroactively applied to void the UIM exclusionary clause, to void the release, and to require State Farm to pay additional benefits under UIM coverage.
Bradbury indeed holds that decisional law handed down after a final settlement between insurer and insured should be retroactively applied to void an otherwise valid release, unless the insurer reasonably and justifiably relied upon the state of the predecisional law. Id. at 509, 589 P.2d 785. State Farm does not ask us to overrule Bradbury but rather asserts under Bradbury it reasonably and justifiably relied on pre-Tissell law, and, accordingly, Tissell should be given prospective application only and the release should remain final.
We reaffirm Bradbury, disagree that it was reasonable and justifiable for State Farm to rely on pre-Tissell law, and hold that Tissell should be retroactively applied to void the release at issue insofar as it may be construed to bar UIM benefits.
An underinsured motorist is one causing injury whose coverage is insufficient to meet the damages inflicted. RCW 48.22.030(1). When an underinsured motorist causes injury, the insurance company of the injured party carrying UIM steps into the shoes of the negligent underinsured and supplements his policy. See Britton v. Safeco Ins. Co. of America, 104 Wash.2d 518, 531, 707 P.2d 125 (1985) (UIM is designed to protect people injured on the roadways by drivers whose vehicles are underinsured).
In Tissell v. Liberty Mut. Ins. Co., 115 Wash.2d 107, 120, 795 P.2d 126 (1990), this court held an exclusionary clause identical to the one at issue in the Jain insurance policy invalid as against public policy because it denied the named insured the protection that the UIM statute, RCW 48.22, was designed to provide. The Tissell court noted that in insurance law, household family members are deemed "named insureds" while unrelated passengers are "other insureds." Tissell, 115 Wash.2d at 116, 795 P.2d 126. The court viewed UIM for named insureds as "first party coverage that applies at all times" and in any situation in which the named insured is injured and undercompensated. As a named insured, Mrs. Tissell's UIM coverage applied at all times and could *926 not be denied simply because she was injured in a single-car accident in a family car. Id. at 121, 795 P.2d 126. Such a denial of coverage was found to contravene the purpose behind UIM's second layer of protection and was accordingly void. Id.
Because the stricken exclusionary clause in Tissell is factually indistinguishable from the one in the present case, the present clause is just as invalid. However, Sungeeta Jain settled before Tissell was released. Thus, she may only recover UIM benefits if Tissell is retroactively applied and if the final release between Jain and State Farm may be voided to the extent it would bar recovery of UIM benefits.
Bradbury v. Aetna Cas. & Sur. Co., 91 Wash.2d 504, 589 P.2d 785 (1979) addressed whether an otherwise valid insurance release or settlement agreement may be voided by retroactive application of decisional law, and established when case law will be retroactively applied in the insurance context.
Generally, two opposing policies apply in deciding the voidability of releases. On the one hand, the law favors private settlement of disputes, and, accordingly, releases are given great weight in establishing the finality of the settlement. Nationwide Mut. Fire Ins. Co. v. Watson, 120 Wash.2d 178, 187, 840 P.2d 851 (1992). On the other hand, Washington law also places great emphasis on the just compensation of accident victims. Id. The court in Bradbury squarely addressed the issue of whether a settlement release between an undercompensated insured and an insurer may be voided by retroactive application of case law and held it may be so voided.
Indeed, Washington has a strong policy of compensating innocent victims of accidents and providing broad coverage. This State has a comprehensive UIM scheme and, as the Tissell opinion indicates, it is broadly construed. The Bradbury holding that releases may be voided by retroactive application of case law implements this broad policy.
Concerning whether decisional law should be applied retroactively or prospectively in the context of voiding releases, Bradbury held that decisional law will be retroactively applied to void an otherwise valid release unless the insurer reasonably and justifiably relied on the law as it existed prior to that decision. Bradbury, 91 Wash.2d at 509, 589 P.2d 785.
In determining whether Aetna, the insurer in Bradbury, reasonably and justifiably relied we narrowed our inquiry to the law on the precise issue as it existed prior to Cammel v. State Farm Mut. Auto. Ins. Co., 86 Wash.2d 264, 543 P.2d 634 (1975), superseded by statute/rule as stated in Lien v. Allstate Ins. Co., 626 F.Supp. 1132 (1986), the decision to be applied. Bradbury, 91 Wash.2d at 510, 589 P.2d 785. The court held that unless there was prior precedent directly on point, the insurer would not be justified in its reliance. Finding none, we concluded the "asserted prior decisional law upon which Aetna claims reliance simply did not exist." Id. at 511, 589 P.2d 785. We also noted that the law on the particular point was unsettled in other jurisdictions and was in flux throughout the nation, further undermining Aetna's asserted reliance. Id. at 510-11, 589 P.2d 785. Accordingly, we applied the Cammel decision retroactively and voided the release. Id. at 511, 589 P.2d 785.
State Farm asserts it was well settled that the type of exclusion voided by Tissell was not void as against public policy. We disagree. Not only did prior case law indicate that the issue was unsettled but State Farm had reason to know, when it settled, that the issue was undergoing lengthy review before this court.
State Farm relies primarily on Millers Cas. Ins. Co. v. Briggs, 100 Wash.2d 1, 665 P.2d 891 (1983), which upheld the validity of clauses excluding the policyholder's car from the definition of underinsured vehicle. Millers involved a single-car accident and an insurance policy which explicitly excluded the car covered by the policy from the definition of underinsured vehicle. Id. at 3, 665 P.2d 891. However, the injured party in Millers was not a named insured as in Tissell but rather an unrelated passenger. This difference is critical.
The Millers court enunciated three reasons why the exclusion did not violate public policy in the context of an injured person *927 who was neither the policyholder nor a family member but rather an unrelated passenger. The Millers court noted: (1) the injured had paid no premiums to the insurer and upholding the exclusion would not lead to a windfall for the insurance company; (2) unlike uninsured motorist coverage, honoring the exclusion would not leave the injured completely without compensation as he already received liability benefits; and (3) assuming the injured has insurance of his own, he should be able to collect under his own UIM coverage. Id. at 7, 665 P.2d 891.
State Farm errs in concluding Millers settled the present question because the first and third legs supporting the Millers decision are not met when the injured is a named insured family member. Indeed, a first party named insured, unlike an unrelated passenger, is deemed to have paid part of the premium. Further, under the third Millers factor, a named insured family member does not have her own insurance policy from which to obtain her own UIM coverage because she was in fact insured as a named insured under the policy in question, and the only source she has for UIM is under the policy unlike the injured in Millers who, as an unrelated passenger, presumably had his own policy with UIM coverage. See Tissell, 115 Wash.2d at 119, 795 P.2d 126.
This result is consistent with the scope of UIM in this State to the extent UIM is meant to place the injured's insurance carrier in the shoes of the underinsured tortfeasor. When the injured is a third party "other insured," he has no UIM coverage with the driver's insurance company. Instead, his own carrier should step in. However, when the injured is a named insured, her carrier is obliged to step into the shoes of the insured driver to supplement the coverage.
The proposition that named insureds and unrelated passengers will be treated differently in the UIM context appeared repeatedly in case law, thus indicating to State Farm that the issue resolved in Tissell was previously unsettled. For example, Kowal v. Grange Ins. Ass'n, 110 Wash.2d 239, 245, 751 P.2d 306 (1988) rested its decision on the difference between named insureds and unrelated third parties in the UIM context. Kowal held the plaintiff was entitled to UIM coverage because she was a named insured under the policy rather than an "other insured." As a named insured she was "entitled to the benefits of underinsured motorist coverage regardless of the circumstances surrounding her injury, so long as that injury was caused by an underinsured motorist." Kowal, 110 Wash.2d at 248, 751 P.2d 306. The Kowal court noted Dobosh v. Rocky Mountain Fire & Cas. Co., 43 Wash.App. 467, 717 P.2d 793, review denied, 106 Wash.2d 1011 (1986) in which plaintiffs were not entitled to UIM recovery because they were merely passengers and not "named insureds." Kowal, 110 Wash.2d at 248, 751 P.2d 306.
This distinction also serves as the basis of the decision in Yarnell v. Farmers Ins. Co., 44 Wash.App. 75, 720 P.2d 862 (1986). Yarnell involved a single-car crash in which the injured as policyholder was a named insured who was denied UIM coverage because of an exclusionary clause. Id. at 76, 720 P.2d 862. While the wording of the exclusionary clause differed from that of Tissell and the present case, the Yarnell court recognized the distinction between named insureds and other insureds and struck down the exclusionary clause on this difference noting that the first and third factors of Millers were not met. Yarnell, 44 Wash.App. at 78, 720 P.2d 862.
In addition to Millers, State Farm also cites for support Holz v. North Pac. Ins. Co., 53 Wash.App. 62, 765 P.2d 1306 (1988). Holz is directly on point. However, Holz was not an opinion upon which State Farm should have relied. By the time Holz was decided by the Court of Appeals, Tissell was already before this court. This court ordered review of Holz deferred pending final determination in Tissell because the issues were identical. Thus, State Farm was on notice that Holz was still subject to review and depended on the result in Tissell.[4]
*928 Given the fact that several cases including Kowal and Yarnell suggested that Millers would not control when the injured party is a named insured as well as the fact that Tissell was pending in this court when State Farm settled, and the final determination of Holz was deferred pending Tissell, State Farm was on notice that this issue had not been resolved by definitive holding. Accordingly, it cannot be said that State Farm reasonably and justifiably relied on the law at the time of the settlement agreement. Thus, Tissell should be applied retroactively by the United States District Court to void the release at issue, and Jain should recover her costs in this certification.
DOLLIVER, SMITH, JOHNSON and MADSEN, JJ., concur.
GUY, Justice (concurring).
The federal court has asked us to answer the question whether the holding in the Tissell[1] case should, under the opinion in the Bradbury[2] case, be applied retroactively to void a release. I agree with the majority that the holding in Bradbury does mandate that result. We, thus, answer the certified question as to the present status of our decisional law. I do have reservations, however, as to whether Bradbury should continue to be the law of Washington. Were that issue squarely before us in a case where opposing litigants had a complete opportunity to litigate the wisdom of the Bradbury decision, I would reevaluate this Court's decision whether an otherwise valid release or settlement agreement should be voided by the retroactive application of decisional law.
ALEXANDER, J., concurs.
DURHAM, Chief Justice (dissenting).
This case provides us an opportunity to overrule the shortsighted decision we made in Bradbury v. Aetna Casualty & Sur. Co., 91 Wash.2d 504, 589 P.2d 785 (1979). By blindly applying the Bradbury rule, the majority ignores both United States Supreme Court precedent, which clearly holds that fully settled or adjudicated cases are beyond the reach of otherwise fully retroactive decisional law, and the broad public policy reasons for finality in contractual dealings. Accordingly, I respectfully dissent.
Bradbury gives no authority or rationale for voiding otherwise valid settlements. In that opinion, we noted that the issue was "one of first impression in this state." Bradbury, 91 Wash.2d at 507, 589 P.2d 785. The Bradbury court summarily assumedwithout discussion or analysisthat the release at issue could be voided by retroactive application of new case law, and proceeded with an inquiry into the issues of justifiable reliance and insurance stacking. In the case at bar, the majority justifies its holding on the unstable precedent established in Bradbury. Recognizing this, the majority attempts to strengthen Bradbury post facto by including justifications to supplement Bradbury's holding.
The United States Supreme Court has consistently refused to apply new law retroactively to settled cases. Reynoldsville Casket Co. v. Hyde, ___ U.S. ___, ___, 115 S.Ct. 1745, 1751, 131 L.Ed.2d 820 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed."); James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 541, 111 S.Ct. 2439, 2446, 115 L.Ed.2d 481 (1991) ("[R]etroactivity in civil cases must be limited by the need for finality[;] ... a new rule cannot reopen the door already closed." (citation omitted)). Because Jain's original claim against State Farm had been completely settled five months before this court decided Tissell, Beam mandates that the Tissell rule has no effecta result that effectively overrules our decision in Bradbury.
We have also consistently recognized that the finality of private settlements trumps any policy supporting full compensation for accident victims. In Nationwide Mut. Fire Ins. Co. v. Watson, 120 Wash.2d 178, 840 P.2d 851 (1992), we stated:
Under contract law, a release is voidable if induced by fraud, misrepresentation or *929 over-reaching or if there is clear and convincing evidence of mutual mistake. In deciding the voidability of releases, two competing policies are considered. The law favors just compensation of accident victims. However, the law also favors private settlements of disputes. Releases are therefore given great weight to support the finality of those settlements.

... [T]his court has generally upheld the validity of releases.
Nationwide, 120 Wash.2d at 187, 840 P.2d 851 (emphasis added) (footnotes and citations omitted). While the majority properly notes that this state has a strong policy of compensating accident victims, this policy does not undermine an otherwise valid settlement agreement.
Public policy favors the amicable settlement of claims without litigation when the agreements are fairly secured. By upholding Bradbury and allowing new laws to apply retroactively to settled agreements, the majority's holding will discourage parties from settling their disputes independent of court intervention. There will be little incentive to settle a case if the potential for new law provides an aggrieved party with a key to reopen the door of settled claims.
In addition, neither the majority nor the Bradbury court has adequately explained when a settled lawsuit or claim would finally be immune from potential revival through retroactively applied law. While the majority's holding helps to provide Jain with compensation she surely needs, by not addressing when settlements will finally be immune, it will undoubtedly require us to consider this issue in a future case.
TALMADGE, J., concurs.
NOTES
[1] The policy's UIM clause stated:

An underinsured motor vehicle does not include a land motor vehicle:
1. insured under the liability coverage of this policy;
2. furnished for the regular use of you, your spouse or any relative, unless the insured is struck as a pedestrian by that vehicle;....
Policy at p. 13 (Ex. C-15 (USDC No. C95-0823R)).
[2] The pertinent parts of the release stated that:

3. ... State Farm ... is making settlement payments for personal injuries in consideration of releases and discharge of ... any and all claims by and on behalf of the parties to this Agreement as a direct or indirect result of the motor vehicle accident of June 14, 1986.
....
10. In consideration for the periodic payments provided for below in this Settlement Agreement, SUNGEETA JAIN ... RELEASES AND DISCHARGES FOREVER ... STATE FARM ... from any and all claims or causes of action ... arising directly or indirectly as a result of the above-described motor vehicle accident of June 14, 1986.
Ex. H., Settlement Agreement at 1-2 (3/27/90).
[3] It would have been an arguable violation of insurance regulations to require the insured to waive UIM benefits to obtain benefits under another coverage such as liability or PIP. Cf. WAC 284-30-330 ("The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance, specifically applicable to the settlement of claims: ... (12) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.").
[4] Further, State Farm was represented in this Jain case by the same Seattle law firm that represented Aetna in the Tissell case.
[1] Tissell v. Liberty Mut. Ins. Co., 115 Wash.2d 107, 795 P.2d 126 (1990).
[2] Bradbury v. Aetna Casualty & Sur. Co., 91 Wash.2d 504, 589 P.2d 785 (1979).